UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Teresa Dimeo<br>Libera Dimeo<br>Angela Dimeo<br>　Plaintiffs<br>v.<br>GMR Credit, LLC<br>Michael Korsinsky<br>　d/b/a Law Offices of Michael Korsinsky<br>　Defendants | §<br>§ Case No.: _____<br>§<br>§ **CV 11 - 1437**<br>§<br>§<br>§ ORIGINAL COMPLAINT<br>§ AND JURY DEMAND<br>§<br>MATSUMOTO, J.　BLOOM, M.J |

　　　Plaintiffs Teresa Dimeo, Libera Dimeo, and Angela Dimeo bring suit against defendants GMR Credit, LLC and Michael Korsinsky d/b/a Law Offices of Michael Korsinsky for defendants' violations of the Fair Debt Collection Practices Act, 15 USC 1692, et seq., (the "FDCPA"), and in support would show as follows.

### A. JURISDICTION AND VENUE

1.　　The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 USC 1692, et seq., (FDCPA). Jurisdiction of the Court arises under 28 USC 1331 in that this dispute involves predominant issues of federal law, the FDCPA. Declaratory relief is available pursuant to 28 USC 2201 and 2202.

2.　　Venue in this District is proper because all or a substantial part of the events or omissions giving rise to their claims occurred in New York County, New York.

3.　　Plaintiffs Libera Dimeo and Angela Dimeo are individuals who resides in Kings County, New York. Plaintiff Teresa Dimeo is an individual who resides in Durham County, North Carolina.

4.　　Defendant MICHAEL KORSINSKY d/b/a/ Law Offices of Michael Korsinsky is a natural

person and a resident of the State of New York. He may be served at the purported principal place of business, LAW OFFICES OF MICHAEL KORSINSKY, 30 Broad St., 15th Floor (Suite 1501), New York, NY 10004, or wherever he may be found.

5. Defendant GMR CREDIT LLC a limited liability corporation organized under the laws of the State of New York. Said Defendant engages in business in New York but does not maintain a designated agent for service of process in New York. This suit arose out of said Defendant's business in New York. Therefore, GMR CREDIT, LLC may be served by and through the New York Secretary of State, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231. The New York Secretary of State may then forward a copy of the summons and complaint to the Defendant's principle place of business, <u>GMR CREDIT, LLC, 30 Broad St., 15th Flr., New York, NY 10004</u>.

6. All conditions precedent necessary to maintain this action have been performed or have occurred.

### B. STATEMENT OF FACTS

7. Defendant GMR Credit, LLC ("GMR") regularly purchases alleged consumer debts after they are in default with the original creditor and is a debt collector within the meaning of the Fair Debt Collection Practices Act ("FDCPA").

8. Defendant Michael Korsinsky d/b/a Law Offices of Michael Korsinsky ("Korsinsky) is an attorney licensed to practice law in New York. Korsinsky regularly attempts to collect alleged debts and is also a debt collector under the FDCPA.

9. On or about January 15, 2009 Korsinsky filed, on behalf of his client GMR Credit, a

collections lawsuit against now-plaintiff Teresa Dimeo in <u>GMR Credit, LLC v. Teresa Dimeo</u>, Index No. <u>4759/09</u>, Kings County Civil Court, seeking to collect an alleged debt of $884.43, plus interest of $213.29.

10. Teresa Dimeo was never served the lawsuit. Defendants filed a false affidavit with the Court that Dimeo was actually served.

11. On or about June 8, 2009 now-defendants filed an Application for Judgment seeking to obtain "costs by statute" of $50.00.

12. However, CPLR 1901(b)(1) limits costs in an action to $20.00 for suits such as that against Teresa Dimeo where the amount sought was less than $6,000.00.

13. On information and belief it is the pattern and practice of defendants to file for default judgments seeking $50.00 in costs when they are limited by law to $20.00.

14. Based on the false affidavit of service submitted by now-defendants, the clerk in the collections lawsuit issued judgment against Teresa Dimeo on or about June 16, 2009 for the amount of $1,221.92.

15. Teresa Dimeo did not receive a copy of the summons and complaint via postal mail.

16. On information and belief, it is the pattern and practice of defendants to file false affidavits of service of process for the purpose of obtaining default judgments against consumers, a practice known as "sewer service."

17. The purpose of defendants filing the false affidavit of service was to conceal from Teresa Dimeo the existence of the collections lawsuit, and the subsequent issuance of the default judgment.

18. Teresa Dimeo has a joint bank account at Citibank with her mother Angela Dimeo and her sister Libera Dimeo.

19. Teresa Dimeo is disabled and receives social security.

20. Her mother Angela Dimeo also receives social security.

21. The funds in the joint Citibank account are from Social Security and are exempt from execution. The payments are made by direct deposit from the Social Security Administration.

22. Korsinsky served Citibank a Restraining Notice freezing the funds in the joint account.

23. At no time did Korsinsky provide Teresa Dimeo, Libera Dimeo or Angela Dimeo of notice of his intent to garnish the joint account.

24. On or about March 30, 2010, Angela Dimeo attempted to withdraw money from the joint bank account from an ATM machine from the joint Citibank account. The ATM machine did not allow her to withdraw money.

25. On or about March 30, 2010, Libera Dimeo contacted Citibank to ask why money could not be withdrawn from the ATM for the joint account.

26. Citibank told Libera Dimeo that the joint account was frozen due to a default judgment by now-defendants.

27. Therefore, on or about March 30, 2010 is the first time Teresa Dimeo, Libera Dimeo, or Angela Dimeo (collectively "plaintiffs Dimeo") knew or could have reasonably known about the default judgment obtained by the now-defendants.

28. On or about April 1, 2010, the former bankruptcy attorney for Teresa Dimeo faxed

Korsinsky a letter stating, in relevant part:

> A lien has been placed on the bank account of Teresa's mother Angela DiMeo for the sum of $2,443.00. Angela DiMeo is the primary account holder and Teresa's social security disability payments go into that account. I am enclosing copies of a transcript for the bank account that shows the deposit of the funds from Social Security Administration for Angels and Teresa DiMeo.
>
> This letter is to put you on notice that this lien should be immediately removed for this account. My client and her mother are both disabled and need the accessibility of the account for every day living expenses. We fully expect your cooperation in resolving this mater. Please provide proof of the release sent to the bank to my office.

29. The letter of April 1, 2010 attached the bank statements.[1] The statements themselves establish 1) the address for Teresa Dimeo is different than that on the affidavit of service; 2) that the account was receiving direct deposits directly from the social security administration; 3) that the sole funds in the account are from social security; and 4) that the account was a joint account of Teresa, Libera and Angela Dimeo.

30. Despite receiving this written notice of April 1, 2011, Korsinsky refused to release any of the funds or to vacate the default judgment.

31. At no point did Korsinsky instruct Citibank to release the frozen joint bank account, as he was required to by law.

32. Libera Dimeo contacted Korsinsky repeatedly pleading for him to release the account.

33. On April 2, 2010 Libera Dimeo spoke with Korsinsky personally.

34. During the April 2, 2010 conversation, Libera Dimeo begged and pleaded with Korsinsky that her mother and sister desperately needed access to the funds to pay for medication and food.

---

[1] The account numbers on the account are redacted for the purpose of the filing of this complaint. They were not redacted when faxed to Korsinsky.

35. During the April 2, 2010 conversation, Libera Dimeo reiterated that the frozen account was a joint account between her, her sister and her mother; that all of the funds in the account were from exempt social security payments; and, in any case, the amount was less than $1,700.

36. Korsinsky did not care.

37. During the April 2, 2010 conversation, Korsinsky told Libera Dimeo that he would not release the funds until payment was made on the judgment.

38. On or about June 1, 2010 and again on or about August 25, 2010, Korsinsky was sent a thick packet of documents with a request that Korsinsky release the freeze on the bank account and vacate the default judgment.

39. Specifically, the packet included an affidavit of June 1, 2010 of Teresa Dimeo swearing that she was never served; and 80 pages of redacted bank statements and cable bills from 2008 – 2010 listing a different address for Teresa Dimeo than the one listed in the affidavit of service as the residence of Teresa Dimeo.

40. Despite the proof that Teresa Dimeo was never served and that the affidavit of service was false, Korsinsky refused to contact the bank to release the account or to vacate the default judgment.

41. Therefore Korsinsky fully ratified and retained the wrongful benefit of the false affidavit of service he used to obtain the default judgment.

42. Ultimately, Teresa Dimeo was forced to retain an attorney in the collections action to vacate the default judgment.

43. Attorney's fees accrued in attempting to vacate a default judgment that is based on a false

affidavit of service are actual damages in a subsequent FDCPA action.

44. Incredibly, even after the appearance of counsel in the underlying action, Korsinsky still refused to release the freeze on the bank account or to vacate the judgment.

45. Ultimately, counsel for Teresa Dimeo was able to have the civil court vacate the default judgment, release the holds on all accounts, and dismiss the collections lawsuit.

46. Plaintiffs Dimeo now file suit against GMR and Korsinsky for their FDCPA violations.

47. At all times relevant to this suit Korsinsky was acting as the attorney of record and agent of GMR.

48. Therefore, GMR is jointly and severally liable for the debt collection violations of Korsinsky.

49. Plaintiffs Dimeo have suffered actual damages as a result of this actions of defendants.

50. Without limitation actual damages includes emotional distress, including crying, sleeplessness, despair, feelings of powerlessness, anxiety, inability to sleep, difficulty breathing, and other forms of mental anguish.

51. As previously noted, attorneys fees in attempting to vacate a default judgment that is based on a false affidavit of service are actual damages in a subsequent FDCPA action.

52. Plaintiffs also lost use of funds while they were garnished, and incurred bank fees as a result of defendant's actions.

53. GMR is a debt collector that is required to be licensed by the New York City Department of Consumer Affairs, pursuant to NYCAC § 20-490.

Last printed 3/23/2011 4:20:00 PM

54. However, GMR did not have a license to collect debts in New York as required by the Department of Consumer Affairs when it filed the collections lawsuit, when it sought and obtained the default judgment, or when it garnished the bank account of plaintiffs Dimeo.

55. Having a license is a condition precedent to being able to legally collect a debt in New York City for a debt collector governed by NYCAC § 20-490.

56. The licensing requirement forces debt collectors to disclose whether any of the individual shareholders or officers have been convicted of a crime; and to disclose whether they are currently subject to a lawsuit, have had judgments rendered against them or have outstanding unpaid judgments. Obviously, the licensing process would help flag rogue, abusive debt collectors who have repeatedly violated the FDCPA. GMR's refusal to be licensed is an attempt to reduce the ability to be held accountable for their FDCPA violations and to be screened out if they have repeatedly violated the FDCPA. Therefore, the refusal to be licensed is an to attempt to gain an unfair competitive advantage over its legitimate debt collection competitors.

57. The failure to obtain a license is not happenstance. The collections complaint affirmed that GMR was refusing to be licensed because GMR was "affiliated" with the Law Offices of Michael Korsinsky. While it is unclear what that means, an "affiliation" with a law firm is not a basis in the statute or the regulations to refuse to be licensed.

### COUNT # 1: Violations of the federal Fair Debt Collection Practices Act.

58. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

59. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt

collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 USC § 1692(e). See also Hamilton v. United Healthcare of La., Inc., 310 F.3d 385, 392 (5th Cir.2002) (holding that "Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope"). Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." See S. Rep. No. 382, 95th Con., 1st Sess. 5, ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance").

60. Plaintiff Teresa Dimeo is a "consumer" as defined by 15 USC § 1692a(3) because she was alleged to owe a debt.

61. Plaintiffs are each a "person" within the meaning of the FDCPA.

62. The obligation alleged by defendants to be owed by Teresa Dimeo is a "debt" as defined by 15 USC § 1692a(5) because the putative credit card debt was incurred primarily for family, personal or household purposes.

63. Defendants are each a "debt collector" as defined in 15 USC § 1692a(6). Defendants each regularly attempt to collect debts, and it is the principal purpose of GMR to collect debts.

64. The actions of defendants enumerated in the above statement of facts constitute an attempt to collect a debt or were taken in connection with an attempt to collect a debt within the meaning of the FDCPA.

65. Defendant violated the following sections of the FDCPA: 15 U.S.C. 1692b, 1692c, 1692d, 1692e, and 1692f. By way of example and not limitation defendant violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: engaging in conduct the natural consequence of which is to harass, oppress or abuse any person; using false, deceptive or misleading representations or means; misrepresenting the character, amount or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; threatening to take and actually taking an action prohibited by law, or which is not intended to be taken; using false, deceptive or misleading representations or means; using a unfair or unconscionable means; the failure to disclose in any communication that the communication is from a debt collector; the false representation that documents are legal process; using unfair or unconscionable means; collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law; and communicating with a consumer when the debt collector knows or should know the consumer is represented by counsel.

66. A prevailing plaintiff in an FDCPA action is entitled to actual damages, additional statutory damages of up to $1,000.00, and mandatory attorney's fees and costs, and these are so sought.

### C. JURY DEMAND.

67. Plaintiff demands a trial by jury.

### D. PRAYER

68. For these reasons, Plaintiff asks for judgment against Defendant for the following:

i. The above referenced relief requested;

ii. Declaratory relief that defendants violated the FDCPA.

iii. Statutory damages of up to $1,000.00 pursuant to 15 USC § 1692k;

iv. Actual, economic, and statutory damages within the jurisdictional limits of the court;

v. Attorney fees and costs;

vi. Prejudgment and post-judgment interest as allowed by law;

vii. General relief;

viii. All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/

Ahmad Keshavarz
ATTORNEY FOR PLAINTIFF
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:    (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com

Citibank Client Services   000
PO Box 769013
San Antonio, TX 78245-9013

ANGELA DI MEO
TERESA DIMEO
ITF LIBERA DIMEO
74 CARROLL ST
BKLYN NY                    11231-2712



**Statement Period**
Feb. 22 - Mar. 21, 2010

Page 1 of 2

## BASIC BANKING ACCOUNT AS OF MARCH 21, 2010

| Savings | Balance |
|---|---|
| Savings | $1,921.77 |

*Get a jump on your retirement fund with a Citibank IRA*
Convert your Traditional IRA to a Roth IRA - now without limits.
Open a new account or roll over an existing IRA or retirement account.
Ask a personal banker today to get started.

## SUGGESTIONS AND RECOMMENDATIONS

*Looking to create a real financial roadmap?*
It starts with good directions. Women & Co., brought to you by Citigroup, is where wisdom, wealth and women meet.
Join at womenandco.com and access a suite of financial planning resources.

## SAVINGS ACTIVITY

Beginning Balance: $1,221.93
Ending Balance: $1,921.77

| Date | Description | Amount Subtracted | Amount Added | Balance |
|---|---|---|---|---|
| 2/22 | Fee for Non-Citibank Atm Use | 4.50 | | 1,217.43 |
| 2/24 | Cash Withdrawal<br>Citibank ATM 375 COURT ST, BROOKLYN, NY | 300.00 | | 917.43 |
| 3/03 | Deposit<br>SOCIAL SECURITY FOR TERESA DI MEO | | 1,004.00 | |
| 3/03 | Deposit<br>SOCIAL SECURITY FOR ANGELA DIMEO | | 1,100.00 | 3,021.43 |
| 3/04 | Cash Withdrawal<br>Citibank ATM 375 COURT ST, BROOKLYN, NY | 500.00 | | 2,521.43 |
| 3/09 | Cash Withdrawal<br>Citibank ATM 375 COURT ST, BROOKLYN, NY | 600.00 | | 1,921.43 |
| 3/19 | Interest for 28 days, Average Daily Balance $1,706.57<br>Average Rate 0.25%, Annual Percentage Yield Earned 0.25% | | 0.34 | 1,921.77 |
| | **Total Subtracted/Added** | 1,404.50 | 2,104.34 | |

## CUSTOMER SERVICE INFORMATION

| IF YOU HAVE QUESTIONS ON: | YOU CAN CALL: | YOU CAN WRITE: |
|---|---|---|
| Savings | 800-627-3999<br>(For Speech and Hearing Impaired Customers Only<br>TDD: 800-945-0258) | Citibank Client Services<br>100 Citibank Drive<br>San Antonio, TX 78245-9966 |

Citibank Client Services   000
PO Box 769013
San Antonio, TX 78245-9013



ANGELA DI MEO
TERESA DIMEO
ITF LIBERA DIMEO
74 CARROLL ST
BKLYN NY                    11231-2712

Statement Period
Jan. 26 - Feb. 21, 2010

Page 1 of 2

## BASIC BANKING ACCOUNT AS OF FEBRUARY 21, 2010

| Savings | Balance |
|---|---|
| Savings | $1,221.93 |

Effective April 1, 2010, we reserve the right to require (7) days advance notice before permitting a withdrawal from all checking accounts. While we do not currently exercise this right and have not exercised it in the past, we are required by law to notify you of this change.

## SAVINGS ACTIVITY

Beginning Balance: $828.68
Ending Balance: $1,221.93

| Date | Description | Amount Subtracted | Amount Added | Balance |
|---|---|---|---|---|
| 1/26 | Cash Withdrawal 10:28a #1832 Non Cit ATM 6210 RENAISSANCE PKWY DURHAM  NCUS | 402.00 | | |
| 1/26 | Fee for Non-Citibank Atm Use | 4.50 | | 422.18 |
| 2/03 | Deposit SOCIAL SECURITY FOR TERESA DI MEO | | 1,004.00 | |
| 2/03 | Deposit SOCIAL SECURITY FOR ANGELA DIMEO | | 1,100.00 | 2,526.18 |
| 2/04 | Cash Withdrawal 10:56a #1832 Non Cit ATM 6210 RENAISSANCE PKWY DURHAM  NCUS | 402.00 | | 2,124.18 |
| 2/10 | Cash Withdrawal 10:35a #1832 Non Cit ATM 11124 Chapel Hill Rd Morrisville NCUS | 202.50 | | 1,921.68 |
| 2/16 | Cash Withdrawal on 02/14* Citibank ATM 375 COURT ST, BROOKLYN, NY | 500.00 | | 1,421.68 |
| 2/17 | Cash Withdrawal Citibank ATM 375 COURT ST, BROOKLYN, NY | 200.00 | | 1,221.68 |
| 2/19 | Interest for 27 days, Average Daily Balance $1,350.50 Average Rate 0.25%, Annual Percentage Yield Earned 0.25% | | 0.25 | 1,221.93 |
| | Total Subtracted/Added | 1,711.00 | 2,104.25 | |

All transaction times and dates reflected are based on Eastern Standard Time.

[1] Transactions made on weekends, bank holidays or after bank business hours are not reflected in your account until the next business day.

## CUSTOMER SERVICE INFORMATION

| IF YOU HAVE QUESTIONS ON: | YOU CAN CALL: | YOU CAN WRITE: |
|---|---|---|
| Savings | 800-627-3999 (For Speech and Hearing Impaired Customers Only TDD: 800-945-0258) | Citibank Client Services 100 Citibank Drive San Antonio, TX 78245-9966 |